UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DANIELLE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2:14-cv-00250-WTL-WGH |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Danielle Jones requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Jones' application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court, having reviewed the record and the briefs of the parties, rules as follows.

**I.     APPLICABLE STANDARD**

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## II.  BACKGROUND

Jones protectively filed for DIB and SSI on June 16, 2011, alleging that she became disabled on May 1, 2010, primarily due to back pain, fibromyalgia, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea, obesity, diabetes, hypertension, dysmetabolic syndrome X, and major depressive disorder. Jones was born on June 2, 1982, and she was twenty-seven years old on the alleged disability onset date. Jones has a high school education, and she has past relevant work experience as a resident care aide and a medical assistant.

Jones' application was denied initially on October 11, 2011, and upon reconsideration on March 15, 2012. Thereafter, Jones requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A video hearing, during which Jones was represented by counsel, was held by ALJ Angelita Hamilton on May 20, 2013. The ALJ issued her decision denying Jones' claim on June 25, 2013; the appeals council denied Jones' request for review on June 16, 2014. Jones then filed this timely appeal.

## III.  THE ALJ'S DECISION

The ALJ determined at step one that Jones had not engaged in substantial gainful activity since May 1, 2010, the alleged onset date. At steps two and three, the ALJ concluded that Jones had the severe impairments of "chronic obstructive pulmonary disease (COPD); obesity; degenerative disc disease of the lumbar spine; mild coronary artery disease (CAD); major depressive disorder; and anxiety disorder," Record at 12, but that her impairments, singly or in

combination, did not meet or medically equal a listed impairment. At step four, the ALJ determined that Jones had the RFC to perform light work with certain postural limitations:

> the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have occasional exposure to wetness/humidity; pulmonary irritants, such as odors, fumes, dusts, and gases; and hazards, such as moving machinery and unprotected heights. The claimant is limited to simple, routine, and repetitive tasks; and work free of production-rate pace.

*Id.* at 16. Given this RFC, the ALJ determined that Jones could not perform any of her past relevant work. At step five, the ALJ determined that Jones could perform the requirements of a few representative occupations, such as a folding machine operator, an inserting machine operator, and a marker. Accordingly, the ALJ concluded that Jones was not disabled as defined by the Act.

## IV.   EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Jones' brief (Dkt. No. 22) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V.   DISCUSSION

In her brief in support of her complaint, Jones advances several objections to the ALJ's decision; each is addressed below.

### A.  Substantial Evidence

Jones argues that the ALJ inaccurately characterized the medical opinions upon which she relied and failed to explain why she rejected the medical conclusions which contradict her RFC determinations. *See* SSR 96-8p (stating that "if the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"); *see also Dixon*, 270 F.3d at 1176 (stating that while she "is not required to address every piece of

4

evidence or testimony, [the ALJ must] provide some glimpse into her reasoning [and] build an accurate and logical bridge from the evidence to her conclusion").

Jones first takes issue with the ALJ's characterization of Dr. Shuyan Wang's medical opinion. On August 30, 2011, Jones met with Dr. Wang for a consultative physical examination at the request of the state agency. Jones complained of headaches, shortness of breath, chest pains in her left side, lower back pain, chronic cough, and pain when walking. She also reported to Dr. Wang that she had stopped working in May of 2010 because of her back pain and COPD. Dr. Wang noted that Jones walked slowly, in a stooped position, and that she held onto the hallway wall when she walked out of the clinic. Dr. Wang further noted that Jones had to have assistance when getting up, switched positions while sitting on the exam table, kept her knee flexed due to back pain, had difficulty getting up because of her back pain, had decreased breathing sounds, had diminished right and left foot dorsalis pedis pulse, and reported suffering from depression.

Dr. Wang also noted that Jones had limited range of motion in several areas and tenderness over her spinal region. Due to her back pain, Jones could not walk on her toes, perform heel walking, tandem walking, or squat without holding something. Dr. Wang diagnosed her with low back pain, left leg pain, sleep apnea, COPD, obesity, diabetes, hypertension, GERD, depression, and anxiety. Dr. Wang stated that "[c]urrently, the claimant is probably not able to do much walking and standing due to back pain. She needs restrictions for weight lifting, carrying, pushing, and pulling. She is not able to do full bending over. She is probably not able to do full squatting. She probably needs to avoid climbing at this time." R. at 362. However, Dr. Wang also noted that Jones had an intact gait and seemed comfortable while sitting in a chair,

5

and opined that "[b]ased on the examination, with appropriate treatment for all the problems, the claimant should be able to do light-duty jobs." *Id.*

The ALJ stated that Dr. Wang "opined that the claimant could do light-duty jobs," and gave Dr. Wang's opinion "significant weight." *Id.* at 20. The Court agrees with Jones that the ALJ mischaracterized Dr. Wang's opinion. It appears to the Court that Dr. Wang was making a predictive statement that, if Jones received the appropriate treatment, she should be able to do light work. The Court does not believe that Dr. Wang's statement can be read to support the conclusion that at the time of her examination Jones could perform light-duty work; in fact, the opposite appears to be true. Since the ALJ gave this mischaracterization of Dr. Wang's medical opinion significant weight, the Court finds this to be reversible error.

Further, the ALJ's opinion cherry picks part of Dr. Wang's report and fails to address evidence that does not support her conclusion. For example, the ALJ's opinion states that "Dr. Wang found that [Jones] had an intact gait and that she appeared comfortable in the seated position," but the ALJ never mentioned that Dr. Wang noted that Jones "held onto something to get up from sitting. When she was sitting on the examination table, sometimes she switched positions. She had to keep her knees flexed when she was in the supine position due to back pain. She had difficulty getting up from the supine position due to back pain. . . . The claimant is not able to do toe walking and heel walking due to pain. She is not able to walk on line for tandem walking." Dr. Wang further opined that Jones would "probably not able to do much walking and standing due to back pain." *Id.* at 362. Thus, the ALJ's opinion improperly ignores those portions of Dr. Wang's report that fail to support her opinion. On remand, the ALJ needs to acknowledge the evidence that does not support her opinion. If she chooses to reject it, she must explain why.

6

### B. Credibility

Jones next argues that the ALJ's credibility determination and resulting rejection of her allegations of disabling back pain are "patently wrong" because the ALJ "failed to offer a reasonable, supported justification for rejecting Plaintiff's allegations of various exertional and postural limitations due to back pain." Dkt. No. 22 at 18.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [her] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)).

Jones takes issue with what she argues is an inaccurate and erroneous description of her daily activities by the ALJ. The ALJ noted in her opinion that there were multiple inconsistencies in the record regarding Jones' daily activities. Concerning her hearing testimony, the ALJ noted that Jones "initially stated that she did not do any of the chores but then admitted that she cleans a little and washes dishes on occasion. . . . The claimant testified that she gets her children ready for school, helps her son with homework, and attends her son's school events. The claimant stated that she went to church three times a month and that she drives 10 miles a day, 5 days a week." R. at 19. The Court agrees with Jones that the ALJ's summary of her testimony was erroneous. Instead of stating that she drove ten miles a day, five days a week, *id.*, Jones testified

that she drives "four to five times a month," *id.* at 49. That difference is significant. Jones also testified that she had been to church two to three times total in the span of a few months, *id.* at 51, not three times a month, *id.* at 19. She testified that she had not been to any of her children's activities in years, she occasionally helped her youngest with his homework, and that she would wake the children up and they would get ready on their own. Also, the Court cannot find any statement in the record by Jones that she did not do any chores. The ALJ erred in relying on mischaracterized testimony to make an adverse credibility finding.

Jones also takes issue with the fact that the ALJ noted the gaps in her medical treatment. An ALJ can consider infrequent treatment or failure to follow a treatment plan, but "must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal quotation marks omitted). The Court agrees that the ALJ failed to ascertain why Jones did not seek medical treatment until a year after her alleged onset date. The ALJ should correct this omission on remand.[2]

### C. The ALJ's Step Five Determination

Finally, Jones argues that the ALJ erred at step five because the ALJ "failed to account for the interruptions that are caused by the Plaintiff's recurring COPD exacerbations." Dkt. No. 22 at 22. Because of the other issues the ALJ will be addressing on remand, the step five analysis also will have to be revisited. On remand, the ALJ should take care to fulfill her obligation to

---

[2] Jones also takes issue with the fact that the ALJ repeatedly emphasized her inability to quit smoking. The Court reminds the ALJ that the Seventh Circuit has held that a claimant's inability to quit smoking, by itself, is an unreasonable basis to dismiss her allegations. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("[E]ven if medical evidence had established a link between smoking and her symptoms, it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful. . . . This is an unreliable basis on which to rest a credibility determination.").

"fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is therefore **REVERSED AND REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 9/15/15

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.